**In re LERNOUT & HAUSPIE SPEECH PRODUCTS N.V., et al., Debtors.**

**Stonington Partners, Inc., et al., Appellants,**

v.

**The Official Committee of Unsecured Creditors, Appellee.**

**Bankruptcy Nos. 00–4397–JHW to 00–4399–JHW. No. CIV.A.03–614–JJF.**

United States District Court, D. Delaware.

March 26, 2004.

Brendan L. Shannon, Curtis J. Crowther, Young, Conaway, Stargatt & Taylor, LLP, Wilmington, DE, Of Counsel: James L. Garrity, Jr., Alan S. Goudiss, Lynette C. Kelly, Shearman & Sterling, New York City, for Stonington Partners, Inc., Stonington Capital Appreciation 1994 Fund, L.P. and Stonington Holdings, L.L.C.

Francis A. Monaco, Jr., Joseph J. Bodnar, Monzack & Monaco, P.A., Wilmington, DE, Of Counsel: Kim Koopersmith, Ira S. Dizengoff, Patrick C. Schmitter, James Savin, Akin, Gump, Strauss, Hauer & Feld, LLP, New York City, for the Official Committee of Unsecured Creditors of Lernout & Hauspie Speech Products N.V.

## OPINION

FARNAN, District Judge.

Pending before the Court is an appeal by Stonington Partners, Inc., Stonington Capital Appreciation 1994 Fund, L.P. and Stonington Holdings, L.L.C. (collectively, "Stonington") from the May 30, 2003 Order (the "Order") of the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") confirming the Plan of Liquidation (the "Plan") for the Debtors, Lernout & Hauspie Speech Products N.V. ("Lernout") and its affiliates. For the reasons discussed, the Court will affirm the May 30, 2003 Order of the Bankruptcy Court.

## I. THE PARTIES' CONTENTIONS

The background relevant to this appeal has been set forth in previous decisions

rendered in this case. *Stonington Partners, Inc. v. Lernout & Hauspie Speech Products N.V.*, 310 F.3d 118, 122–125 (3d Cir.2002)("*Stonington II*"); *Lernout & Hauspie Speech Products, N.V. v. Stonington Partners, Inc.*, 268 B.R. 395, 397–398 (D.Del.2001) ("*Stonington I*"). In *Stonington II*, the Third Circuit reversed and remanded the decision of this Court affirming the Bankruptcy Court's decision that the priority, classification and treatment of creditors' claims should be determined according to the laws of the United States, without regard to the laws of Belgium, and enjoining creditors from prosecuting these issues in the Belgian court under Belgian law. Concluding that the Bankruptcy Court's decision amounted to an anti-suit injunction, the Third Circuit remanded the case to the Bankruptcy Court for consideration of comity and other principles relevant to anti-suit injunctions. The Third Circuit found remand particularly necessary, because the Debtors had not requested an injunction, and the Bankruptcy Court did not focus its attention on the interplay of various comity concerns. 310 F.3d at 129.

On remand, the Debtors withdrew their support for the injunction, and instead, proposed a Plan that allocated the Debtors' assets between the Belgian proceeding and this proceeding. The Plan also recognized the opportunity of all creditors to pursue their claims in the Chapter 11 case, as well as in the Belgian proceeding, and no creditor was enjoined from pursuing their claims. The Bankruptcy Court confirmed the Plan finding that it met the requirements for confirmation under the Bankruptcy Code. *In the Matter of Lernout & Hauspie Speech Products, N.V.*, 301 B.R. 651 (Bankr.D.Del.2003). The Bankruptcy Court also concluded that the choice of law analysis and the related coordination between the Bankruptcy Court and the Belgian court urged by the Third Circuit were no longer necessary, because an anti-suit injunction was no longer being imposed on any creditor.

By its appeal, Stonington contends that the Bankruptcy Court erred in failing to conclude that the Plan violated Section 1129(a)(3) of the Bankruptcy Code. Stonington contends that the Plan was not proposed in good faith, because it was meant to "side-step" the choice of law analysis required by the Third Circuit in its decision. Stonington points out that the Bankruptcy Court admitted that "[t]he efforts [to coordinate proceedings] that were actually conducted, are not the level of diligent effort and coordination that the Circuit was contemplating or urging be undertaken in this case." (Bankruptcy D.I. 141 at 96). Stonington contends that the Plan does not resolve the true conflict between U.S. and Belgian law, and that the Plan actually interferes more with the Belgian proceeding than the anti-suit injunction, because it leaves virtually no assets for Stonington to pursue in Belgium. Thus, Stonington contends that the Bankruptcy Court erred in failing to conduct the choice of law analysis required by the Third Circuit's decision, and therefore, the decision of the Bankruptcy Court should be reversed.

In response, the Debtors contend that the Bankruptcy Court correctly concluded that the Plan did not violate the requirement of Section 1129(a)(3) of the Bankruptcy Code that the plan be "proposed in good faith and not by any means forbidden by law." 11 U.S.C. § 1129(a)(3). The Debtors contend that there is no remaining conflict between Belgian law and U.S. law, and therefore, the Third Circuit's directives regarding a choice of law analysis and coordination with the Belgian court are no longer applicable. The Debtors also point out that Stonington did not object to the methodology used in calculating

the allocations or the manner in which that methodology was applied to achieve the allocation. Thus, the Debtors maintain that Stonington cannot now complain that because there are not enough assets allocated for the Belgian estate to ensure a recovery for Stonington, the Plan violates Section 1129(a)(3). The Debtors further point out that the Curators appointed by the Belgian court did not object to the Plan, and therefore, principles of international comity are not violated by the Plan.

## II. STANDARD OF REVIEW

■ The Court has jurisdiction to hear an appeal from the Bankruptcy Court pursuant to 28 U.S.C. § 158(a). In undertaking a review of the issues on appeal, the Court applies a clearly erroneous standard to the Bankruptcy Court's findings of fact and a plenary standard to its legal conclusions. *See Am. Flint Glass Workers Union v. Anchor Resolution Corp.*, 197 F.3d 76, 80 (3d Cir.1999). With mixed questions of law and fact, the Court must accept the Bankruptcy Court's finding of "historical or narrative facts unless clearly erroneous, but exercise[s] 'plenary review of the trial court's choice and interpretation of legal precepts and its application of those precepts to the historical facts.'" *Mellon Bank, N.A. v. Metro Communications, Inc.*, 945 F.2d 635, 642 (3d Cir.1991) (citing *Universal Minerals, Inc. v. C.A. Hughes & Co.*, 669 F.2d 98, 101–02 (3d Cir.1981)). The decision to extend or deny comity to a foreign court is reviewed under an abuse of discretion standard. However, the Bankruptcy Court abuses its discretion in this regard when its decision is premised upon an error of law or a misapplication of law to the facts. *Stonington II*, 310 F.3d at 122. The appellate responsibilities of the Court are further understood by the jurisdiction exercised by the Third Circuit, which focuses and reviews the Bankruptcy Court decision on a *de novo* basis in the first instance. *In re Telegroup*, 281 F.3d 133, 136 (3d Cir.2002).

## III. DISCUSSION

■ After reviewing the decision of the Bankruptcy Court in light of the applicable law, including the Third Circuit's decision in *Stonington II*, the Court concludes that the Bankruptcy Court did not err in confirming the Debtors' Plan. Section 1129(a)(3) of the Bankruptcy Code requires the Plan to have been proposed in good faith and not by any means forbidden by law. The Bankruptcy Code does not define the term "good faith," but case law has defined the term as requiring, alternatively that (1) the plan be consistent with the objectives of the Bankruptcy Code[1]; (2) the plan be proposed with honesty and good intentions and with a basis for expecting that reorganization can be achieved[2]; or (3) there was fundamental fairness in dealing with the creditors.[3]

Stonington contends that the Plan violates Section 1129(a)(3), because it attempts to circumvent the Third Circuit's decision and is contrary to the doctrine of comity and the objectives of the Bankruptcy Code. Addressing these concerns, the Bankruptcy Court concluded that the case no longer presented a true conflict of law, because no anti-suit injunction was being imposed on any creditor. The Court

---

1. *See In re Sylmar Plaza, L.P.*, 314 F.3d 1070, 1074 (9th Cir.2002); *In re PWS Holding Corp.*, 228 F.3d 224, 242 (3d Cir.2000).

2. *In re Piper Aircraft Corp.*, 244 F.3d 1289, 1300 (11th Cir.2001); *In re T–H New Orleans L.P.*, 116 F.3d 790, 802 (5th Cir.1997).

3. *In re WCI Cable, Inc.*, 282 B.R. 457, 484 (Bankr.D.Or.2002).

agrees with the Bankruptcy Court. As the Bankruptcy Court recognized, there is no longer a true conflict necessitating a choice of law analysis, because "[a]ll creditors may seek a distribution in both the Chapter 11 case, in which instance the claim will be treated under the Bankruptcy Code, and the Belgian case, in which the claim will be treated under applicable Belgian law." *In the Matter of Lernout & Hauspie Speech Products,* 301 B.R. at 659. The Third Circuit's decision in *Stonington II* was premised on the existence of an anti-suit injunction. Absent such an injunction, the choice of law and serious comity concerns expressed by the Third Circuit are no longer implicated.

Further, while the Bankruptcy Court did not undertake the dialogue with the Belgian court recommended by the Third Circuit, the Bankruptcy Court did act in a manner respectful of its foreign counterpart and commensurate with the circumstances which no longer demonstrated a direct conflict of law and no longer restrained creditors from proceeding in the foreign jurisdiction. It is undisputed that the Bankruptcy Court gave serious consideration to the views of the Curators in this proceeding, and as the Bankruptcy Court noted with respect to the Plan in particular, the Curators did not voice any objection.[4] In the Court's view, the absence of any objection by the Curators further supports the Bankruptcy Court's conclusions that the Plan was proposed in good faith and avoided a "true conflict" with Belgian law.

To the extent that Stonington suggests that the Bankruptcy Court disregarded the decision of the Third Circuit by con-

firming the Plan, the Court is not persuaded by Stonington's argument. In rendering its decision, the Bankruptcy Court was particularly mindful of the Third Circuit's decision and took seriously its obligation to comport with the legal requirements of that decision. However, the Third Circuit did not preclude the Bankruptcy Court from taking further action in the case, and the Third Circuit's decision was limited to the true conflict of law presented by the anti-suit injunction. In addition, the Third Circuit acknowledged that, while it strongly recommended coordination with the Belgian court, such coordination was not mandatory under either Third Circuit precedent or any principle of law. *Stonington II,* 310 F.3d at 133. Because the foundation for the Third Circuit's decision had changed such that an anti-suit injunction was no longer imposed on the parties and the Third Circuit's directives were not mandatory, the Bankruptcy Court correctly concluded that the decision of the Third Circuit was no longer applicable under the circumstances, and the Plan did not violate the good faith requirements of the Bankruptcy Code as a result of the Bankruptcy Court's failure to take the suggested, non-mandatory action.

In sum, the Court agrees with the decision and rationale of the Bankruptcy Court set forth at the May 29 hearing and codified in the Bankruptcy Court's subsequent written decision. Accordingly, the Court will affirm the May 30, 2003 Order of the Bankruptcy Court.

## CONCLUSION

For the reasons discussed, including the reasons set forth by the Bankruptcy Court

---

4. In addition to considering the views of the Curators, the parties and the Bankruptcy Court also undertook some efforts to propose a protocol and open the lines of communication with the Belgian court both before and after the Third Circuit rendered its decision in

*Stonington II.* However, the Bankruptcy Court was advised that the Curators believed these proposals would be unlikely to succeed. *In the Matter of Lernout & Hauspie Speech Products,* 301 B.R. at 657–58.

in its decision at the May 29, 2003 hearing and its subsequent written decision, the Court will affirm the May 30, 2003 Order of the Bankruptcy Court.

An appropriate Order will be entered.